# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **ALBERT E. MACE,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 08-14-B-W** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant** | ) | |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether substantial evidence supports the commissioner's determination that the plaintiff, who alleges disability stemming from a low IQ, depression, mood disorder, and cognitive disorder, failed to meet the criteria of Listing 12.05C, Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), pertaining to mental retardation. I recommend that the decision of the commissioner be vacated and the case remanded with instructions to award benefits.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520, 416.920); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on October 17, 2008, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

plaintiff had severe impairments of borderline intellectual functioning, cognitive disorder, anxiety, and depression, Finding 3, Record at 15; that he did not have an impairment, or combination of impairments, that met or medically equaled any of the Listings, Finding 4, *id*.; that he had no physical limitations but retained the residual functional capacity ("RFC") to understand, remember, and carry out simple instructions, maintain acceptable attention, persistence, and pace, interact and relate appropriately with supervisors and co-workers, adapt to occasional and routine changes, avoid common hazards, travel in unfamiliar places and take public transportation, and set realistic goals and make plans independently of others, but was unable to interact with the public, Finding 5, *id*.; that he was capable of performing past relevant work as a lumber straightener, which did not require the performance of activities precluded by his RFC, Finding 6, *id*. at 18; and that he therefore had not been under a disability from July 1, 2006, through the date of decision, Finding 7, *id*. at 19.[2]  The Decision Review Board declined to review the decision, *id*. at 5-8, making it the final determination of the commissioner, 20 C.F.R. § 405.450(a); *Dupuis v. Secretary of Health & Human Servs*., 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

Although the administrative law judge reached Step 4 of the commissioner's sequential evaluation process, the instant appeal implicates Step 3, at which stage a claimant bears the

---

[2] The plaintiff had alleged that he became disabled on July 1, 2006.  *See* Record at 12.  He is insured, for purposes of SSD benefits, through December 31, 2011.  *See* Finding 1, *id*. at 14.

burden of proving that his or her impairment or combination of impairments meets or equals the Listings. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520(d), 416.920(d)); *Dudley v. Secretary of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listed impairment, the claimant's medical findings (*i.e.*, symptoms, signs, and laboratory findings) must match those described in the listing for that impairment. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1525(a), 404.1528, 416.925(d), 416.928). To equal a listing, the claimant's medical findings must be "at least equal in severity and duration to the listed findings." 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1526(a), 416.926(a)). Determinations of equivalence must be based on medical evidence only and must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1526(b), 416.926(b)).

The plaintiff argues that, as in *Lombard v. Barnhart*, No. 02-146-B-W, 2003 WL 22466178 (D. Me. Oct. 31, 2003) (rec. dec., *aff'd* Nov. 18, 2003), the administrative law judge misconstrued the requirements of Listing 12.05C and placed undue weight on prior and current work performance. *See* Statement of Specific Errors ("Statement of Errors") (Docket No. 8) at 3-6. He requests remand for payment of benefits. *See id*. at 6. For the reasons that follow, I conclude that the plaintiff is correct, and that remand with instructions to award benefits is warranted.

## II. Discussion

Listing 12.05 provides in relevant part:

> 12.05 *Mental Retardation*: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period: *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

***

C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

Listing 12.05.

The administrative law judge found that the plaintiff did not have an impairment meeting the criteria of Listing 12.05 because "the evidence fail[ed] to demonstrate significantly sub-average general intellectual functioning with deficits in adaptive functioning which initially manifested prior to age 22."  Record at 15.  He further explained:

Although intelligence testing in February, 2007, yielded a performance I.Q. score of 72, verbal I.Q. score of 72, and full scale I.Q. score of 69, the evidence . . . fails to demonstrate that the claimant's intellectual functioning resulted in deficits in adaptive functioning which initially manifested [themselves] prior to age 22.  He did not receive special education services in school, is able to read without difficulty, was able to perform successfully substantial gainful activity for many years, and continues to work in a competitive work environment.

*Id*. at 17 (citations omitted).[3]

Citing, *inter alia*, *Lombard*, the plaintiff takes the position that his February 2007 IQ test results alone sufficed to establish a presumption of "significantly subaverage general intellectual functioning with deficits in adaptive functioning" before age 22, which no record evidence, including his 21 years of work as a lumber straightener, sufficed to rebut.  *See* Statement of Errors at 3-6.  He notes, in particular, that while he graduated from high school and did not receive special education services, he was a twin born prematurely, was slower than others while

---

[3] The plaintiff worked for more than 20 years, from April 1981 to December 2001, as a general laborer for a lumber company.  *See, e.g.*, Record at 106, 290.  As of June 18, 2007, the date of his hearing, he was working part-time as a cook and a cleaner for wages of $7 per hour.  *See id*. at 298-99.  This part-time work was found not to constitute "substantial gainful activity" and thus, in itself, did not preclude the plaintiff's claim for benefits.  *See* Finding 2, *id*. at 15.

growing up, completed the fourth grade three times, was 20 years old when he graduated from high school, and was discharged from the Army for inability to complete training. *See id*. at 4-5; Record at 288-90. He contends that the administrative law judge's reliance on his current and past work history was misplaced, noting, *inter alia*, that in *Lombard*, this court determined that a claimant met the requirements of Listing 12.05C despite his longtime history of work as forklift driver for a tanning company. *See* Statement of Errors at 5; *Lombard*, 2003 WL 22466178, at *3 n.6. He reasons that because the administrative law judge found that he suffered from other severe impairments besides borderline intellectual functioning, he met the remaining criterion of suffering "additional and significant-work related limitation of function" and, therefore, is entitled to a remand with instructions to award benefits. *See* Statement of Errors at 2, 6.

In *Lombard* and in other cases, this court recognized that the "capsule," or definition, section of Listing 12.05 sets forth a separate requirement that claimants must meet (the "capsule requirement") in addition to the requirements of subsections A, B, C, or D. *See Lombard*, 2003 WL 22466178, at *3; *see also Sturtevant v. Barnhart*, No. 04-188-B-W, 2005 WL 1353727, at *4 (D. Me. June 7, 2005) (rec. dec., *aff'd* June 27, 2005); *Ouellette v. Apfel*, No. 00-112-P-H, 2000 WL 1771122, at *3 (D. Me. Dec. 4, 2000) (rec. dec., *aff'd* Dec. 29, 2000). However, in *Ouellette*, this court rejected the commissioner's argument that, to satisfy the capsule requirement, a claimant must demonstrate that he or she suffered specific deficits in adaptive functioning prior to age 22. *See id*. Instead, this court held that a claimant satisfies his/her burden as to the capsule requirement merely by demonstrating that mental retardation, as gauged by IQ testing, manifested itself before age 22. *See id*. In that context, this court observed that other courts have held that, absent evidence to the contrary, a person's IQ and/or condition of

mental retardation is presumed to have been approximately constant throughout his/her life. *See id*.

At oral argument, counsel for the commissioner argued that the administrative law judge supportably deemed the plaintiff not to have suffered from adaptive deficits prior to age 22 given (i) the occurrence of a carbon monoxide poisoning incident in 2004, years after the plaintiff turned 22, that caused cognitive and possibly intellectual difficulties, (ii) the lack of record evidence illuminating why the plaintiff repeated the fourth grade, whether from illness, truancy, family instability, or any other cause, (iii) the lack of record evidence explaining why the plaintiff failed to complete his Army training, and (iv) the drawing of an adverse credibility finding that the plaintiff does not challenge on appeal and that, in counsel's view, encompassed uncorroborated subjective claims such as the plaintiff's testimony that he and his twin were born to be slower than other people. Counsel added that even if this court were to adopt a rebuttable presumption that a person's IQ is constant throughout life, the presumption here is rebutted by a number of factors, including the plaintiff's performance at the time of his hearing of competitive employment.

As counsel for the commissioner correctly noted at oral argument, this court in the past has signaled that it views with favor the adoption of a rebuttable presumption that a person's IQ remains fairly constant throughout life, but it has had no occasion to decide the question. *See Lombard*, 2003 WL 22466178, at *3 n.5. I now recommend that the court adopt that presumption.

The administrative law judge relied on the plaintiff's lack of special education services, ability to read without difficulty, years of employment as a general laborer for a lumber company, and purported continued work in a competitive work environment to deny his Listing

12.05C claim.  A lack of special education services, an ability to read without difficulty, and an ability to work in an essentially physical labor job, however, are not in themselves necessarily inconsistent with a claim of lifelong mild mental retardation.  *See Ouellette*, 2000 WL 1771122, at \*2-\*3 & n.2 (despite the fact that the plaintiff had completed her GED, had no problem reading and writing, and maintained her household consisting of herself and two children, consulting psychologist found that she suffered from a lifelong learning problem, and two non-examining psychological experts checked boxes indicating she met capsule requirement); *Lombard*, 2003 WL 22466178, at \*3 & n.6 (despite the fact that the plaintiff was able to sustain longtime employment as a forklift driver for a tanning company, consulting psychologist described his intellectual impairment as chronic; in addition, he was in special education, was ranked No. 142 of 143 in his high school class, and could neither read nor write).  Further, as counsel for the plaintiff pointed out at oral argument, the administrative law judge's characterization of the plaintiff's ongoing part-time work as "competitive" appears to be undermined by vocational expert testimony describing him as performing his short-order cook job with an atypical amount of supervision, in a "structured" fashion.  *See* Record at 305 (vocational expert testimony that short-order cook typically does not require constant supervision; "It sounds like this is more of a structured situation.").

Nor am I persuaded that the carbon monoxide poisoning incident, on which counsel for the commissioner placed much emphasis at oral argument, rebuts the presumption of a fairly constant lifetime IQ.  As the plaintiff's counsel rejoined, there is no expert evidence of record that the incident impacted the plaintiff's IQ.  While Donna M. Gates, Ph.D., a Disability Determination Services ("DDS") examining consultant, found that the plaintiff suffered from

cognitive disorder features as a result of carbon monoxide exposure, she expressed no opinion that the incident had affected his IQ.  *See id.* at 238.[4]

Finally, as the plaintiff notes, he adduced evidence, albeit largely in the form of his own testimony, that is consistent with a finding that he suffered from borderline intellectual functioning prior to age 22, including his graduation from high school at age 20 after completing the fourth grade three times, his failure to complete Army training, and his generally low grades in school.  *See id.* at 288-90.  While it is true that the administrative law judge made an adverse credibility finding, he did not specifically discredit this historic evidence.  *See id.* at 18.

The commissioner having (i) raised no challenge to the validity of this court's holding in *Ouellette* that a claimant satisfies his or her burden as to the capsule requirement merely by demonstrating that mental retardation, as gauged by IQ testing, manifested itself before age 22, and (ii) identified no evidence of record that fairly can be said to rebut the presumption that the plaintiff's IQ remained constant throughout his life, remand with instruction to pay benefits is warranted.  *See Seavey v. Barnhart*, 276 F.3d 1, 11 (1st Cir. 2001) ("[O]rdinarily the court can order the agency to provide the relief it denied only in the unusual case in which the underlying facts and law are such that the agency has no discretion to act in any manner other than to award or to deny benefits.").

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** with instructions to award benefits.

---

[4] Dr. Gates noted that the plaintiff reported cognitive changes following his carbon monoxide exposure, including mood lability, social withdrawal, irritability, and memory difficulties.  *See* Record at 238.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 11th day of November, 2008.


/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge

9